UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ELLA DUNBAR,** on behalf of
herself and all others similarly situated,

Plaintiff,

**vs.**                                    **CASE NO. 8:19-cv-00715-CEH-TGW**

**SYMMETRY MANAGEMENT CORP.**
d/b/a **BCC FINANCIAL MANAGEMENT**
**SERVICES, INC.,**

Defendant.

_____/

**JOINT MOTION FOR PRELIMINARY APPROVAL**
**OF CLASS ACTION SETTLEMENT**
**AND INCORPORATED MEMORANDUM OF LAW**

COME NOW, the Plaintiff, Ella Dunbar and Defendant, Symmetry Management

Corp. d/b/a BCC Financial Management Services, Inc. ("collectively, the Parties"), by

and through their undersigned counsel, pursuant to Federal Rule of Civil Procedure 23(e),

and hereby file this Joint Motion for Preliminary Approval of Class Action Settlement,

and state:

<u>**SUMMARY OF THE LITIGATION**</u>

Plaintiff, Ella Dunbar ("Plaintiff" or "Mrs. Dunbar"), initiated this class action

against Defendant, Symmetry Management Corp. d/b/a BCC Financial Management

Services, Inc. ("Defendant" or "BCC Financial"), alleging violations of the Fair Debt

Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and Florida Consumer

Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA"). *See* Doc. 1. Plaintiff

alleges Defendant sent form dunning letters that misstated consumers' verification rights under the FDCPA, 15 U.S.C. § 1692g, by falsely representing that the consumer could invoke their statutory verification rights *orally* when the FDCPA requires that statutory verification rights be invoked *in writing* and requires debt collectors to give consumers written notice of that requirement, and thus created a substantial risk that the consumers would not be able to exercise their rights under the FDCPA, which in turn also violated the FCCPA. *Id.* Defendant denies the form dunning letters violate the FDCPA or FCCPA, and, in the alternative, asserts the conduct giving rise to the violation was unintentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably formulated to avoid the violation. *See* Doc. 15.

After Defendant Answered, the Parties began to discuss the possibility of settlement. Plaintiff's counsel propounded discovery necessary to negotiate the terms of a class-wide settlement, which Defendant's counsel ultimately provided. At an in-person mediation on February 26, 2020, the Parties reached a class-wide settlement, subject to court approval. Thereafter, the Parties executed a formal Class Action Settlement Agreement (the "Settlement" or "Settlement Agreement") attached hereto as **Exhibit A**.

## STATEMENT OF THE RELIEF REQUESTED

The Parties respectfully request an order: 1) certifying the proposed Classes for settlement; 2) preliminarily approving the proposed Settlement Agreement; 3) certifying Plaintiff as Class Representative; 4) appointing Plaintiff's attorney Class Counsel; 5) appointing KCC Class Actions Services, LLC as Settlement Administrator; 6) directing notice to the class by publication of the Class Notice, attached hereto as **Exhibit B** and;

7) set dates for opt-outs, objections, and a hearing under Federal Rule of Civil Procedure 23(c)(2). Specifically, the Parties request this Court certify the following Classes[1] for settlement purposes:

**FDCPA CLASS**

(i) All persons with addresses in the state of Florida (ii) to whom initial communication letters were sent containing the phrase, "If you dispute the debt or any portion thereof by writing or calling this office within 30 days after receiving this notice this office will obtain verification of the debt or a copy of a judgment and mail you a copy of such judgment or verification. If you request this office by writing or calling within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor." (iii) in an attempt to collect a debt incurred for personal, family, or household purposes (iv) which were not returned undelivered by the U.S. Post Office (v) during the one-year period prior to the filing of the original complaint in this action through the date of certification.

**FCCPA CLASS**

(i) All persons with addresses in the state of Florida (ii) to whom initial communication letters were sent containing the phrase, "If you dispute the debt or any portion thereof by writing or calling this office within 30 days after receiving this notice this office will obtain verification of the debt or a copy of a judgment and mail you a copy of such judgment or verification. If you request this office by writing or calling within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor." (iii) in an attempt to collect a debt incurred for personal, family, or household purposes (iv) which were not returned undelivered by the U.S. Post Office (v) during the two-year period prior to the filing of the original complaint in this action through the date of certification.

---

[1] The FDCPA Class and FCCPA Class are referred to collectively as "the Classes." Excluded from the Classes are Defendant, its officers and directors, their immediate families and their legal representatives, heirs, successors, or assigns, and any entity to which Defendant has or had a controlling interest. Also excluded are the federal district and magistrate judges assigned to this Action, along with their spouses and persons within the third degree of relationship to them, any potential class member that validly excludes themselves from the Classes.

## STATEMENT OF THE BASIS FOR THE REQUEST

The Parties request certification of the above Classes for settlement pursuant to Federal Rule of Civil Procedure 23. As discussed *infra*, Plaintiff's claims are based on the form letter used by Defendant with respect to thousands of Florida residents. As a result, Plaintiff satisfies the numerosity, commonality, and typicality elements of Rule 23(a) of the Federal Rules of Civil Procedure. In addition, potential Class Members are readily ascertainable, in that Defendant's records identify each member. Plaintiff's claims likewise satisfy the predominance and superiority requirements of Rule 23(b). Moreover, Plaintiff and Plaintiff's counsel are adequate to represent the Classes. Pursuant to Rule 23(e), the Parties seek approval of the attached Settlement Agreement, which provides *cy pres*-only distributions and equitable relief to the Classes, and permits members to opt out if they do not wish to be bound by the terms of the settlement. The basis for this request is that the U.S. Congress and Florida Legislature have set limits on class liability in FDCPA and FCCPA cases, such that class members could never receive more than a *de minimis* recovery from the litigation of this case.

## MEMORANDUM OF LAW

I. **The Court Should Preliminarily Certify the Proposed Classes**

A. **Standard for Class Certification**

For a class to be certified, even for settlement purposes, the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure must be satisfied along with one of the three categories of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). The decision to certify is within the broad discretion of the district court and is reviewed

for an abuse of discretion. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004).

When ruling on a motion for class certification "the court is generally bound to take the

substantive allegations of the complaint as true." *Brinker v. Chi. Title Ins. Co.*, 2012 WL

1081211 (M.D. Fla. Feb. 9, 2012). "Rule 23 must be liberally interpreted" and read to

"favor maintenance of class actions." *King v. Kansas City S. Indus., Inc.*, 519 F.2d 20,

25-26 (7th Cir. 1975). Both the FDCPA and FCCPA expressly recognize the propriety of

class actions by specifically providing special damages provisions and criteria for class

action cases. *See* 15 U.S.C. §§ 1692k(a), (b) and Fla. Stat. § 559.77, respectively.

## B.  The Proposed Classes Meet the Requirements for Certification

As discussed below, because of overwhelmingly common questions of fact and

law, "letter class actions" of this nature for violations of the FDCPA and/ or FCCPA are

eminently certifiable. *See, e.g.*, *Sanchez v. Velocity Invs., L.L.C.*, No. 1:15-CV-3096-

LMM-WEJ, 2015 WL 12777990, at *3 (N.D. Ga. Dec. 11, 2015) ("[C]laims arising out

of a form letter are often certified as class actions."). A court can view the content and

timing of the common communications and determine for all class members whether they

violate the FDCPA, a strict liability statute. Further, the "least sophisticated consumer"

standard to be applied to FDCPA claims, means there are no individual interpretations or

reliance issues to contend with. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1172-75

(11th Cir. 1985).

1.  Standing

Prior to certifying a class, and before undertaking any formal typicality or

commonality review, "the district court must determine that at least one named class

representative has Article III standing to raise each class subclaim." *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). Here, Plaintiff asserts her individual and class claims based upon her receipt of the November 18, 2018 form dunning letter attached to her Complaint as Exhibit A (Doc. 1-2), which included the following language, hereinafter referred to as the "Verification Notice," that Plaintiff alleges misstates verification rights under the FDCPA and in turn also violates the FCCPA:

> If you dispute the debt or any portion thereof by **writing *or calling*** this office within 30 days after receiving this notice this office will obtain verification of the debt or a copy of a judgment and mail you a copy of such judgment or verification. If you request this office by **writing *or calling*** within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Accordingly, Plaintiff has standing to raise each class subclaim. *See, e.g.*, *Gaalswyk-Knetzke*, 2008 U.S. Dist. LEXIS 124382, at *5-6 (M.D. Fla. Aug. 14, 2008) (finding Plaintiff had standing to assert her FDCPA and FCCPA claims, as well as the claims of the other class members, where there was no question she received the form letters at issue); *see also Dickens v. GC Servs. Ltd. P'ship*, No. 8:16-cv-00803, 2016 U.S. Dist. LEXIS 94621 (M.D. Fla. Jul. 20, 2016) (holding named plaintiff adequately alleged an injury-in-fact by alleging she did not receive statutorily required disclosures).

    2.  Rule 23(a)(1)—Numerosity

    Rule 23(a)'s first requirement is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986). A class size of "more than forty" is

generally adequate. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Here, Defendant attests the FCCPA class has 123,118 potential class members and the

FDCPA class has 45,926 potential class members. *See* Declaration of Emil Speranza, Jr.

attached hereto as **<u>Exhibit C</u>**. Plainly, it would be impracticable to join thousands of

consumers as plaintiffs. Accordingly, the numerosity requirement is met. Moreover, there

is no difficulty ascertaining who the members of the Classes are, as Defendant has

records identifying each such member.

    3.   <u>Rule 23(a)(2)—Commonality</u>

    The test for commonality is whether the class claims present "questions of law or

fact common to the class." Fed. R. Civ. P. 23(a)(2). This is another "low hurdle."

*Williams v. Mohawk Indus.*, 568 F.3d 1350, 1356 (11th Cir. 2009). Plaintiff need only

show that the class claims present "at least one issue whose resolution will affect all or a

significant number of the putative class members," or that their claims "are susceptible to

classwide proof." *Id.* at 1355. The commonality element is generally satisfied when

"[d]efendants have engaged in a standardized course of conduct that affects all class

members." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004)

("Similarly, a plaintiff satisfies the commonality requirement when all class members

received the same collection letter.").

    Here, the questions of fact and law are entirely common. Plaintiff and the Classes'

claims originate from the same conduct, practice, and procedure on the part of Defendant,

namely the sending of a form dunning letter sent to consumers. Thus, if brought and

prosecuted individually, the claims of each class member would require proof of the same

material and substantive facts. For these reasons, claims brought as a result of a form

letter are routinely certified as class actions. *See, e.g.*, *Fuller v. Becker & Poliakoff, P.A.*,

197 F.R.D. 697, 700 (M.D. Fla. 2000) ("The principle legal issues arising from the

collection letters is whether the letters violate the FDCPA and FCCPA. All members of

the prospective class could be affected from the issue regarding the letters sent. The

Court finds the commonality requirement is satisfied because one common issue is

sufficient to meet the commonality requirement of Rule 23.").

    4.  Rule 23(a)(3)—Typicality

Rule 23(a)(3) requires that the claims of the named plaintiff be typical of the

claims of the class. Though the issues of commonality and typicality require separate

inquiries, the proof required for each tends to merge. *Hudson v. Delta Air Lines, Inc.*, 90

F.3d 451, 456 (11th Cir. 1996) (citation omitted). As the Eleventh Circuit explained,

typicality involves the following:

> A class may be certified only if the claims or defenses of the representative parties are
> typical of the claims or defenses of the class. The claim of a class representative is typical
> if the claims or defenses of the class and the class representative arise from the same
> event or pattern or practice and are based on the same legal theory. A class representative
> must possess the same interest and suffer the same injury as the class members in order to
> be typical under Rule 23(a)(3). The typicality requirement may be satisfied despite
> substantial factual differences when there is a strong similarity of legal theories.

*Williams*, 568 F.3d at 1356–57 (internal citations and internal quotation marks omitted).

As noted above, the claims of both the Plaintiff and the putative class members

originate from the same conduct and practices and procedures employed by Defendants.

As a result, Plaintiff possesses the same interest, asserts identical claims, and seeks

identical relief as the class members. Accordingly, the typicality requirement is satisfied.

*See Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697 (M.D. Fla. 2000) (finding

typicality where each prospective class member received a variation of the same collection letter as the named plaintiffs).

    5.  <u>Rule 23(a)(4)—Adequacy of Representation</u>

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiff must have no interests antagonistic to the class and his counsel must be qualified to represent the class. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987); *see also Carriuolo v. G.M. Co.*, 823 F.3d 977, 989 (11th Cir. 2016) ("[A] party's claim to representative status is defeated only if the conflict between the representative and the class is a fundamental one, going to the specific issues in controversy.")

Plaintiff meets this test. As explained *supra*, her interests are squarely aligned with the Classes, she understands the basic facts and law at issue in this case, and she understands she has a duty to the class members to make decisions in the interest of the class, not just her own, as well as to participate in and consult with the attorneys about the case, and that she may be called upon to testify and provide documents in the case. *See* Declaration of Ella Dunbar, attached hereto as **<u>Exhibit D</u>**.

Plaintiff's attorney is also adequate. Mr. Giardina has been practicing for nearly two decades, and has extensive experience in both state and Federal Courts. Mr. Giardina has made thousands of court appearances on debt collection cases, and is intimately familiar with the mechanics of consumer rights litigation. He is a well-respected member of the legal community with substantial experience in the area of consumer rights and has been found adequate and appointed class counsel in at least one other consumer class

action here in the Middle District of Florida. He has diligently investigated and dedicated substantial time and resources to the investigation and prosecution of the class members' claims. *See* Declaration of James S. Giardina, attached hereto as **Exhibit E**. Mr. Giardina also satisfies the considerations of Rule 23(g) and should be appointed as Class Counsel.

      6.   Rule 23(b)(3)—Predominance

      "Under Rule 23(b)(3), 'it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions.'" *Klay*, 382 F.3d at 1254. Indeed, "[p]redominance means that the issues in a class action must be capable of generalized proof such that the issues of the class 'predominate over those issues that are subject only to individualized proof.'" *Gaalswyk-Knetzke*, 2008 U.S. Dist. LEXIS 124382, at *10-11.

      The objective of Rule 23(b)(3) is to promote judicial economy and efficiency. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

      Here, common issues necessarily predominate because Plaintiff's claims are all based on Defendant's standard form letter. For this reason, courts in this Circuit routinely find that claims based on form debt collection letters and standardized conduct satisfy the predominance requirement of Rule 23(b)(3). *See, e.g.*, *Gaalswyk-Knetzke*, 2008 U.S. Dist. LEXIS 124382, at *11 (finding common issues predominate where "all of the

claims of the named Plaintiff and the class members are based on the same legal theories, the same form collection letters, and the same remedy—statutory damages").

As Judge Thompson explained in certifying a class action based on an allegedly misleading form debt collection letter:

> In general, predominance is a test readily met in certain cases alleging consumer ... fraud. Here, not only will class-wide issues of proof predominate, but it is unlikely that there will be any issues of individualized proof. To determine whether the collection letters sent by American Recovery Systems violated the FDCPA, the court will not need to question whether each class member was deceived or misled by the privacy notice, because the least sophisticated consumer standard governs. Additionally, the Court need not determine whether the named plaintiff or other putative plaintiffs read or were confused by the notice, as the standard is whether the least sophisticated consumer would have been misled. Thus, the only individualized proof necessary will be whether each class member received a letter identical to [plaintiff's]. Since that is a prerequisite for joining the class, the court finds that common questions of fact and law predominate in this case.

*Lewis v. ARS Nat'l Servs., Inc.*, 2011 U.S. Dist. LEXIS 100139, *14-5 (N.D. Ala. Sept. 6, 2011) (internal quotations omitted). The claims of the members of the FDCPA and FCCPA class will rise or fall on the question of whether the Letter violated the FDCPA. Accordingly, class certification is appropriate.

   7.   Rule 23(b)(3)—Superiority

When evaluating the superiority requirement of Rule 23(b)(3), the Court must consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Under Rule 23(b)(3), the superiority analysis focuses upon "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010). It is proper for a court, in deciding the "best" available method to resolve the controversy, to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

Here, no one member of the Classes that Plaintiff seeks to represent has an interest in controlling the prosecution of the action because the claims of all members are identical and each Class member is likely to have suffered relatively small statutory damages. In certifying FDCPA claims, Judge Scola explained:

> The Court finds that resolving the issues raised by the Plaintiff in a class action would be superior to other available methods to fairly and efficiently resolve this controversy. As explained above, common questions of law and fact predominate over any individualized issues. In addition, the Court finds that the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that a class action would be the superior method of adjudicating Plaintiffs' claims under the FDCPA.

*Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 522 (S.D. Fla. 2013) (internal quotations and citations omitted).

For these reasons, a class action is the superior method to adjudicate this matter. *See Gaalswyk-Knetzke,* 2008 U.S. Dist. LEXIS 124382, at *16 ("Congress, however, did not contemplate that suits under the FDCPA would be adjudicated by means of large numbers of individuals filing separate suits. On the contrary, Congress provided for class

actions as a means for recovery to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action."); *Agan*, 222 F.R.D. at 701 (finding a class action superior because, in part, "Debtors who seek to change the unfair debt collection practices may lack the incentive to bring action under the FDCPA and the FCCPA because successful plaintiffs are only awarded a maximum of $1,000.").

**II.  The Court Should Preliminarily Approve this Class Action Settlement**

   **A.  The Legal Standard for Preliminary Approval**

   Federal Rule of Civil Procedure 23(e) requires court approval for any compromises of a class action. *Amchem Products, Inc.*, 521 U.S. at 617. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g.*, *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex."); *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

In considering a proposed class settlement, federal courts generally follow a two-step process—preliminary and final approval. *Annotated Manual for Complex Litigation* at § 21.632. As explained by Judge Covington in a similar FDCPA case:

> The first step in determining whether to grant preliminary approval to a class settlement is for the Court to make a preliminary fairness evaluation of the proposed settlement. The Court must evaluate the likelihood that the Court would approve the settlement during its second review stage, the full fairness hearing. In so doing, the Court will examine the submitted materials and determine whether the proposed settlement appears fair on its face.

*Narvaez v. Law Offices of Antonio Duarte, III, P.A.*, No. 8:14-cv-164 (M.D. Fla. Mar. 25, 2015) (internal quotations and citations omitted). "A proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, if there is probable cause to notify the class of the proposed settlement." *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007) (internal citations omitted).

For the reasons detailed *infra*, the Court should find that the proposed Settlement Agreement is fair, reasonable, and adequate, in light of the relevant facts, the applicable law, and the potential value of the settlement to the Classes.

## B. Terms of the Proposed Settlement

The proposed Settlement contemplates the following general terms with the full terms set forth in the Settlement Agreement attached hereto as **Exhibit A**:

1. *Cy Pre* Distributions**.**

   a. On behalf of the FDCPA Class, Defendant shall pay to Public Justice, PC a *cy pres* distribution in the amount of $32,670, which is 1% of Defendant's net worth and represents the maximum statutory recovery the FDCPA Class could recover against Defendant in this case.

b. On behalf of the FCCPA Class, Defendant shall pay to St. Michael's Legal Center for Women and Children, Inc. a *cy pres* distribution in the amount of $32,670, which is 1% of Defendant's net worth and represents the maximum statutory recovery the FCCPA Class could recover against Defendant in this case.

2. <u>Equitable Relief.</u> Defendant agrees to be enjoined from sending dunning letters with the following Verification Notice, which falsely represents that consumers can invoke their verification rights orally:

> If you dispute the debt or any portion thereof by writing or calling this office within 30 days after receiving this notice this office will obtain verification of the debt or a copy of a judgment and mail you a copy of such judgment or verification. If you request this office by writing or calling within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

3. <u>Class Notice and Settlement Administration.</u> Separate and apart from the *cy pres* distributions that Defendant has agreed to make on behalf of the Classes, Defendant agrees to bear all costs of class administration and notice.

4. <u>Class Plaintiff</u>. Separate and apart from the *cy pres* distributions that Defendant has agreed to make on behalf of the Classes, Defendant agrees to pay Plaintiff: individual FDCPA statutory damages of $1,000.00, individual FCCPA statutory damages of $1,000.00, and a Service Award of $2,000.00, as approved by this Court. This proposed Settlement is not contingent upon any particular amount of Service Award or Attorney's Fees and Expenses being awarded by the Court.

5. <u>Attorney's Fees and Costs</u>. Separate and apart from the *cy pres* distributions, Defendant will pay Class Counsel's reasonable attorney's fees to be approved by the Court. Plaintiff will apply for an award of attorney's fees to be calculated via Lodestar. Defendant has agreed not to oppose an award of up to $25,000 and Plaintiff has agreed not to seek more than $45,000. This proposed Settlement is not contingent upon any particular amount of Service Award or Attorney's Fees and Expenses being awarded by the Court.

Importantly, the settlement is an opt-out settlement allowing those who wish to

opt out to pursue actual damages, statutory damages, or both on an individual basis,

under statute's allowing successful plaintiffs to recover attorneys' fees and costs.

### C.  The Settlement was not the Product of Collusion

Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See* Manual for Complex Litigation, Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

Here, the proposed Settlement Agreement was reached through arms-length negotiations and Class Counsel is able and qualified to evaluate the proposed Settlement Agreement on behalf of the Class Members. *See* Declaration of James S. Giardina, attached hereto as **<u>Exhibit E</u>**. The Parties settled only after first engaging in active and contested litigation in this court, including Plaintiff's researching, preparing, and filing a motion for class certification, albeit a motion that was denied as moot by this Court when the Parties reached an agreement. Where a case proceeds adversarially, this counsels against a finding of collusion. *See Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014). The Parties ultimately settled the case only after mediation with a well-regarded mediator, James R. Betts. *See* Declaration of James S. Giardina, attached hereto as **<u>Exhibit E</u>**. Further, the Parties only discussed attorney's fees after they had an agreement in principal regarding all other terms. *Id.* Therefore, the Court should find the Agreement is not the product of fraud, overreaching, or collusion by or between the negotiating parties. *See Saccoccio*, 297 F.R.D. at 692 (S.D. Fla. 2014).

### D. The Settlement Falls Within the Range of Reasonableness

There are a number of factors the Court should consider in determining whether a settlement is fair, adequate, and reasonable:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which settlement was achieved.

*Bennett*, 737 F.2d at 986. In undertaking this analysis, however, the court "should be hesitant to substitute his or her own judgment for that of counsel." *In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991), and the trial judge should weigh "the overriding public interest in favor of settlement" when reviewing the settlement agreement. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Saccoccio*, 297 F.R.D. at 691-92.

Here, the proposed settlement's terms more than support the Court finding, at least preliminarily, that the settlement is fair, reasonable, and adequate. First, while Plaintiff's counsel is confident as to the merits of the case,[2] there is no assurance of ultimate success. In particular, the case law surrounding the injury-in-fact element of standing for FDCPA validation notices is complex, creating risk for the Plaintiff and putative classes. *See Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990 (11th Cir. 2016) (holding that plaintiff who received collection letters without required disclosure had suffered an injury-in-fact despite alleging no actual damages, and therefore had

---

[2] *See Bishop v. Ross Earle Earle & Bonan, P.A.*, 817 F.3d 1268 (11th Cir. 2016) (holding that a collector violates both section 1692g and section 1692e of the FDCPA by falsely stating that a consumer can invoke verification rights orally).

standing to bring the class action); *Dickens*, 2016 U.S. Dist. LEXIS 94621 (applying *Church* in a case involving the same alleged violation at issue here and holding the plaintiff had adequately alleged in injury in fact by alleging she did not receive statutorily required disclosures); *see also Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747 (6th Cir. 2018) (holding named "[p]laintiffs have satisfied the concreteness prong of the injury-in-fact requirement of Article III standing by alleging that [collector's misstatement of verification rights] created a material risk of harm to the interests recognized by Congress in enacting the FDCPA"); *but see Casillas v. Madison Avenue Assoc., Inc.*, 926 F.3d 329 (7th Cir. 2019) (concluding that the plaintiff could not satisfy the injury-in-fact element of standing based simply on the omission of the statutorily required language without an allegation that she was harmed or faced a real risk of harm as a result of that omission.)

Under the second two *Bennett* factors, the proposed settlement represents significant recoveries for the Classes. First and foremost, the Settlement brings Defendant into compliance with the FDCPA as it has agreed to be enjoined from sending dunning letter with the Verification Notice, which falsely represents that consumer can invoke their verification rights orally. Further, Defendant has agreed to pay the maximum class-wide statutory damages allowed under the FDCPA and the FCCPA.   In this respect, both the FDCPA and the FCCPA limit statutory damages in class actions to $500,000 or 1% of Defendant's net worth, whichever is less. 15 U.S.C. § 1692k(a)(2); Fla. Stat. § 559.77(2). Defendant has attested that its net worth as of June 30, 2019 was $3,267,000. *See* Declaration of Emil Speranza, Jr., attached hereto as **Exhibit C**. Accordingly, the maximum each Class could be awarded is $32,670. In order to settle this case, Defendant

has agreed to pay the maximum amount to both Classes; however, because the Classes are so large, 45,926 and 123,118, respectively, Defendant's maximum liability per Class Member is very small, $0.71 and $0.26, respectively. Because each Class Member can receive no more than a *de minimis* recovery there could never be any meaningful distribution to the Classes.  Accordingly, the Parties have agreed that the interest of the Classes would be better served by *cy pres* distributions to Public Justice, PC and St. Michael's Legal Center for Women and Children, Inc. both of which are 501(c)(3) organizations who offer legal assistance on behalf of consumers. *See* Declaration of James S. Giardina, attached hereto as **Exhibit E**.

Courts have held that *cy pres* distributions of the entire damage fund are appropriate where due to the FDCPA's limits on statutory class damages the pro rata share of the recovery is too small to justify individual payments.  *See Gaalswyk-Knetzke v. Receivable Mgmt. Servs. Corp.*, No. 08-cv-00493 (M.D. Fla. July 10, 2009) (approving a *cy pres* distribution in lieu of individual payments to class members as "fair, adequate and reasonable based on the limitations on class liability created by 15 U.S.C. § 1692k and F.S. § 559.72(2))."; *Klewinowski v. MFP, Inc.*, No. 13-cv-01204 (M.D. Fla. Dec. 5, 2013) (preliminary approving a cy pres-only distribution due to statutory caps on class liability) (settlement finally approved Apr. 11, 2014). In *Gammon v. GC Servs. Ltd., P'ship*, 162 F.R.D. 313 (N.D. Ill. 1995), an FDCPA case, the court approved a *cy pres*-only distribution noting that class actions are designed not only to compensate individuals who have been harmed, but also to deter violations of the law, especially when small individual claims are involved.

Moreover, even if successful at trial, it is not clear the Court would award the Classes the maximum possible class wide statutory damages of $32,670, or that class members would be awarded the maximum individual damages of $1,000 if they proceeded individually.   *See Dickens v. GC Servs. Ltd P'ship*, 220 F. Supp. 3d 1312, 1324 (M.D. Fla. 2016) (determining that the statutory damages for the same violation at issue here "should be nominal, whether that award applies to Dickens alone or a class of plaintiffs"), *vacated* No. 16-17168 (11th Cir. Aug. 23, 2017) (vacating award of nominal damages by the court because the FDCPA requires the questions of statutory damages to be submitted to a jury).  In light of the fact that the U.S. Congress and Florida Legislature have statutorily capped Defendant's liability at $32,670 for each class, the proposed Settlement, which requires Defendant to make *cy pres* distributions on behalf of each Class in the amount of $32,670, which represents the maximum statutory recovery as well as equitable relief is a fair, reasonable, and adequate settlement.

The fourth and sixth *Bennett* factors also support the Court finding the settlement to be fair, reasonable, and adequate. As stated above, the relief afforded to the Class is virtually identical to the relief the Class could expect to receive had Plaintiffs prevailed on their claims through further litigation. Early settlement on such terms is an appropriate method to minimize the expense and delay associated with litigation while at the same time furthering the legislative goals of private enforcement of the FDCPA and FCCPA.

The fifth *Bennett* factor, the substance and amount of opposition to the settlement, need not come into play in the Court's analysis at this preliminary stage. Instead, the Court should preliminarily approve the settlement so that Class Members may be notified

of the settlement's terms and have an opportunity to raise any such objections. The Court

can then assess this fifth *Bennett* factor at the final approval hearing.

### E.  Service Award and Plaintiff's Attorney Fees and Expenses

The proposed Settlement contemplates individual FDCPA statutory damages of

$1,000.00,[3] individual FCCPA statutory damages of $1,000.00,[4] a class representative

service award of $2,000.00 to Plaintiff, and up to $45,000.00 in attorneys' fees and costs

to Class Counsel. The Parties contemplate that the request for service award, attorney's

fees, and costs will be made in connection with the Motion for Final Approval, with

notice to the class of the Final Fairness hearing.

The service award and attorney's fee and expense negotiations were conducted at

arm's-length after an agreement for the Classes had been reached and is being paid over

and above the relief to the Classes. *See* Declaration of James S. Giardina, attached hereto

as **Exhibit E**. Further, Plaintiff's counsel has agreed to only seek fees equal to Plaintiff's

counsel's Lodestar for this matter not to exceed $45,000.00. *See id.*

Settlement as to attorney's fees between plaintiffs and defendants in class actions

are encouraged, particularly where the attorney's fees are negotiated separately and only

after material terms of the settlement have been agreed to between the Parties. *See*

*Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this

---

[3] The FDCPA expressly contemplates that named plaintiffs in FDCPA class action are entitled to receive individual statutory damages up to $1,000.00. 15 U.S.C. § 1692k(a)(2)(B).

[4] The FCCPA expressly contemplates that named plaintiffs in FCCPA class action are entitled to receive individual statutory damages up to $1,000.00. Fla. Stat. § 559.77(2).

kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney fees.").

Plaintiff has agreed to serve as Class Representative in this case. In doing so, she has obtained qualified counsel to prosecute her rights and those of the Class. She is knowledgeable of the facts and law surrounding this case, has reviewed discovery produced by Defendant, attended mediation, and with the advice of counsel made the decision to accept the Settlement. It is the opinion of the Parties that in light of Plaintiff's service to the Classes which includes obtaining a settlement equal to the maximum statutory damages available to the classes, the proposed $2,000 service is fair and reasonable to compensate Plaintiff for her services as class representative. *See Gaalswyk-Knetzke*, No. 08-cv-00493 (M.D. Fla. Jul. 10, 2009) (approving $2,000 service award to named plaintiff who secured *cy pres*-only distribution of $50,000 on behalf of FDCPA Class.); *Ioime v. Blanchard, Merriam, Adel & Kirkland, P.A.*, No. 15-cv-130-OC-30-PRL (M.D. Fla. May 16, 2016) (awarding class representative $2,000 service award for FDCPA class action settled at early phase of litigation).

### F.  The Proposed Class Notice Satisfies Due Process

Rule 23 requires the Court to "direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Due to the statutory damages cap, providing individual notice by mail to the 169,044 class members would be cost prohibitive. In this respect, counsel was quoted between $52,760 - $57,360 *plus* postage to provide individual notice to an estimated 168,000 Class Members via First Class United States Mail. *See* Declaration of James S. Giardina, attached hereto as

**Exhibit E**. Defendant does not have electronic mail addresses for the Class Members. *See* Declaration of Emil Speranza, attached hereto as **Exhibit C**. Based on this economic reality, the Parties recognize that the best notice practicable under the circumstances of this case is notice by publication. *See Buchman v. Bray & Lunsford, P.A.*, No. 07-cv-01752 (M.D. Fla. Apr. 30, 2008) (Doc. 46) ("The Court further finds that in light of the size of the class, the limitations on Defendant's liability set forth in 15 U.S.C. § 1692k and F.S. § 559.77(2), the fact that even the maximum statutory penalty would generate less than one cent per class member, publication notice is an appropriate method of giving notice to the Class of the terms of the settlement and their right to object."); *Gaalswyk-Knetzke,* No. 08-cv-00493 (M.D. Fla. Mar. 27, 2009) (approving notice by publication in FDCPA case with *de minimis* damages due to statutory damages cap); *Klewinowski*, No. 13-cv-01204 (M.D. Fla. Dec. 5, 2013) (same).

The Parties propose that notice to the Classes be published via both online and print media campaigns. Specifically, by the date set by the Court, the Settlement Administrator will implement a 70% reach media campaign inclusive of internet media, targeting Florida adults 18+ delivered on both desktop and mobile devices via the Google Display Network (GDN) and the social media site Facebook over a 30-day period. Further, by the date set by the Court, the Settlement Administrator will produce and place the Summary Notice as a $1/8^{th}$ page ad unit that will appear in the Legal/Classified section one time in each of the top four circulation newspapers within the state of Florida (Fort Lauderdale Sun Sentinel, Tampa Bay Times, Miami Herald, Orlando Sentinel) and a Florida statewide Press Release (up to 400 words). The internet

Ads and the printed Summary Notice will direct Class Members to the Settlement Website, which would include the Long Form Notice. The proposed Ads, the Summary Notice, and Long Form Notice (hereinafter, collectively "Class Notice") are attached hereto as **Exhibit B**.

The Class Notice is sufficient to inform Class Members regarding: (a) the formation of the Classes; (b) the Class definitions; (c) the terms of the proposed settlement; (d) the proposed award of attorney's fees and expenses to Class Counsel; (e) Class Members' right to object to and to opt out of the proposed Settlement; (f) the time and date of the Fairness Hearing; and (g) Class Members' right to appear at the Fairness Hearing in favor of or in opposition to the proposed Settlement. The Class Notice is written in plain English in a manner reasonably calculated to allow Class Members to participate in the settlement. The Notice provides Class Members with sufficient information to make an informed decision to object to any aspect of the proposed Settlement.

### G.  Proposed Order

Attached hereto as **Exhibit F**, is a proposed Preliminary Approval Order, which the Parties believe reflects the legal analysis that must be completed by this Court and sets forth the deadlines and obligations of the parties under the proposed Settlement.

### III.  <u>Conclusion</u>

For the reasons set forth above, this Court should enter the Proposed Preliminary Approval Order, attached as **Exhibit F**, directing that notice should be issued to the Classes and moving this Settlement to the next stage of resolution.

Respectfully submitted, by:

| | |
|---|---|
| */s/ James S. Giardina* | */s/ Bennett C. Lofaro* |
| [ X  ] James S. Giardina – Trial Counsel | **Bennett C. Lofaro, Esq.** |
| Fla. Bar No. 0942421 | Florida Bar No. 37129 |
| [     ] Kimberly H. Wochholz | blofaro@boydlawgroup.com |
| Fla. Bar No. 0092159 | **Jessica R. Welsh, Esq.** |
| **The Consumer Rights Law Group, PLLC** | Florida Bar No. 1005599 |
| | jwelsh@boydlawgroup.com |
| 3104 W. Waters Avenue, Suite 200 | servicetpa@boydlawgrou.com |
| Tampa, Florida 33614-2877 | Boyd Richards Parker & Colonnelli, P.L. |
| Tel: (813) 435-5055 ext 101 | 400 North Ashley Drive |
| Fax: (866) 535-7199 | Suite 1150 |
| James@ConsumerRightsLawGroup.com | Tampa, Florida 33602 |
| Kim@ConsumerRightsLawGroup.com | Tel: (813) 223-6021 |
| ***Counsel for Plaintiff*** | Fax: (813) 223-6024 |
| | Attorney for Defendant |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 28, 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system.

/s/ James S. Giardina
James S. Giardina
Fla. Bar No. 0942421